IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:12-cr-00267-RBH |
| | ) | |
| v. | ) | |
| | ) | |
| Christopher Jamie Davis. | ) | **ORDER** |
| | ) | |

This matter is before the Court following a hearing held on October 16, 2012, regarding Defendant Christopher Jamie Davis's motion to suppress evidence seized after a traffic stop in Aynor, South Carolina. The Court took the motion under advisement and, after considering the parties' arguments and the testimony of the witnesses, denies Davis's motion.

## FACTUAL BACKGROUND

On November 16, 2011, Officer Cox, with the Aynor Police Department, observed the vehicle in which Davis was riding as a passenger speeding on Highway 501. Officer Cox proceeded to stop the vehicle, which had been rented by another person who was not in the vehicle at the time of the stop.[1] During the stop, Officer Cox testified that he recognized the smell of marijuana. He called for Deputy Tabitha Smith, with the Horry County Sheriff's Office, to assist him while he performed a search of the vehicle. Davis and the driver were handcuffed and seated in the backseat of Officer Cox's patrol car while the search was performed. Ultimately, Officer Cox discovered two red Solo cups containing Grey Goose vodka in the center console, an open Grey Goose bottle in the glove box, and an extinguished marijuana "roach" floating in one of the Solo cups. Both Davis and the driver were arrested for possessing an open container of vodka in

---

[1] At the hearing, Davis did not dispute testimony that neither he nor the driver were authorized to drive the rental vehicle.

violation of South Carolina law. Officer Cox left to transport Davis and the driver to the detention facility.

While the vehicle was being loaded onto a wrecker for impoundment, Deputy Smith observed a bag on the ground, underneath the passenger side of the vehicle. She asked the driver of the wrecker whether the bag was his; however, he denied it was. When she opened the bag, Deputy Smith found its contents were relevant to Officer Cox's suspicions. She called Officer Cox, who was on his way to the detention facility, back to the scene of the traffic stop. When Officer Cox returned, he and Deputy Smith inventoried the contents of the bag, which displayed the name "Davis" on the outside. The contents included clear bags of white powder, pills, and "rocks"; a green, leafy substance; a digital scale; a glass plate; razor blades; two handguns; bullets; and Davis's identification card. The Government subsequently indicted Davis for possession of cocaine and cocaine base with intent to distribute, as a felon in possession of a firearm, and for possession of a firearm in relation to drug trafficking. His motion to suppress the firearms and drugs as fruit of an unconstitutional search is now before the Court.

## DISCUSSION

The question before the Court is whether Davis maintained a reasonable expectation of privacy in his bag containing the handguns and drugs, where a search of the bag and its contents would be unreasonable and require a warrant. Davis contends the contents of the bag should be suppressed at trial because no search warrant was issued. He argues the bag was neither subject to the automobile exception to the warrant requirement nor abandoned property. The Government

2

responds that Davis lost any reasonable expectation of privacy in the bag when he placed it on the ground underneath the vehicle.[2]

As a preliminary matter, in reviewing the testimony of both Officer Cox and Deputy Smith, as well as the testimony of the driver of the wrecker, the Court finds no inconsistencies in the witnesses' accounts and that all witnesses were credible. This determination is supported by the witnesses' sequestration during the hearing at Davis's request, as well as the exhibits and video of the traffic stop, which were reviewed by the Court in its entirety and which corroborated the testimony of each witness. Furthermore, critical to this analysis, the Court finds that, while the driver was being questioned by a distracted Officer Cox and before Deputy Smith arrived at the scene, Davis opened the front passenger door and placed the bag underneath the vehicle. Indeed, no witness who testified at the hearing saw Davis handle the bag. This finding is supported, first, by the fact that Officer Cox never observed Davis's attempt to get rid of (or to hide) the bag, yet the bag was found on his side of the vehicle. Second, the video shows the front passenger side door[3] open and then close while Officer Cox, standing behind the vehicle with the driver, attempted to get the driver's consent to search the vehicle. Finally, Davis never disputed this fact in his argument at the hearing.

Two possible inferences can be drawn from Davis's placing the bag on the ground underneath the vehicle. The first is, as Davis argues, that he was hiding the bag—unquestionably in

---

[2] The Government also raises other arguments to support the admission of the bag's contents. First, it contends that, regardless of whether the bag was abandoned, Officer Cox and Deputy Smith had probable cause to perform a warrantless search of the bag as long as evidence established that the bag came from the vehicle. Second, the Government argues that Davis had no standing to challenge the search of the automobile because neither Davis nor the driver were authorized to drive the rental vehicle and had no reasonable expectation of privacy. Davis responds that his basis for standing is the fact that the bag that was searched was not found in the vehicle, but on the side of the road. Given this Court's finding that the bag was abandoned by Davis, a determination of whether probable cause existed to search the bag is not necessary.
[3] Davis was sitting in the front passenger seat.

an attempt to prevent Officer Cox from discovering its illegal contents—and that he never intended to relinquish his Fourth Amendment rights in the bag but instead intended to retrieve it later, maintaining an expectation of privacy in the bag and its contents. The second possible inference is that Davis intended to abandon and get rid of the bag, separating it from the vehicle and hoping Officer Cox would not connect it to him. Davis argues that no evidence was introduced to support the second inference, except the mere and insufficient fact that the bag was on the side of the road. However, Davis's subjective expectation, by itself, is not dispositive of this issue. Rather, his expectation of privacy, for Fourth Amendment purposes, must be objectively reasonable.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendants must have "manifested a subjective expectation of privacy in their [property] that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988). "[T]he proper test for abandonment is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned." *United States v. Haynie,* 637 F.2d 227, 237 (4th Cir. 1980) (internal quotation marks and citation omitted).

It is well settled that "[t]here is no reasonable expectation of privacy in containers or contraband dropped or abandoned by a suspect fleeing from law enforcement officials." *United States v. Clemons*, 72 F.3d 128, 1995 WL 729479, at *3 (4th Cir. 1995) (citing *California v. Hodari D.*, 499 U.S. 621, 629 (1991). Moreover, the amount of cases involving defendants attempting to separate themselves from contraband comes as no surprise—especially the situation in which a suspect will expressly deny ownership of bags in order to avoid arrest. The Fourth Circuit has routinely held that such denials, even if the sole reason for the denial was to avoid incrimination, are

tantamount to abandonment of the property. *See United States v. Han*, 74 F.3d 537, 544 (4th Cir. 1996); *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995); *United States v. Flowers*, 912 F.2d 707, 711 (4th Cir. 1990); *United States v. Clark*, 891 F.2d 501, 506 (4th Cir. 1989); *United States v. Williams*, 538 F.2d 549, 551 (4th Cir. 1976). While the situation here involves slightly different facts than the published cases decided by the Fourth Circuit, the principles are nevertheless the same. Indeed, the focus of the analysis is on whether "society accepts [the expectation of privacy] as *objectively reasonable*." *Greenwood*, 486 U.S. at 39 (emphasis added).

In light of the ample caselaw—even assuming Davis expected to reclaim his bag after the stop—this Court cannot find Davis held an objectively reasonable expectation of privacy in his bag and its contents after he placed it on the ground underneath the vehicle. Although unpublished, the Fourth Circuit's opinion in *United States v. Epps*, 983 F.2d 1058, 1992 WL 387568, at *2 (4th Cir. 1992), provides the closest case for comparison. There, the defendant was a passenger in a vehicle that was stopped in connection with a disturbance. He and the other occupants of the vehicle were asked to exit the vehicle because of a possibility they possessed handguns. Immediately before a pat-down frisk, the defendant fled. In pursuing the defendant, a law enforcement officer found his jacket on the ground, and in the jacket, the officer discovered a substantial amount of cash, as well as drugs. Although the Fourth Circuit focused on the constitutionality of the defendant's seizure, the abandonment of the jacket was also an issue. The court noted his jacket "must therefore be deemed abandoned," a fact that precluded a Fourth Amendment challenge. *Id.*

The Court is further guided by the Fourth Circuit's reliance in *Clemons* on the Tenth Circuit's decision in *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983). During the investigation of a bank robbery, law enforcement officers observed the defendant emerge from a home carrying a bag. The man fled after he was ordered to halt. When officers later discovered

him without the bag, he replied, "I don't know what you are talking about." The officers ultimately discovered the bag near the location the defendant was found, and the bag contained a handgun, among other items connecting the defendant to the bag. The Tenth Circuit, in finding the defendant had abandoned the bag, recognized that "he may have hoped that the police would not find it and that he could later retrieve it[; h]owever, his ability to recover the satchel depended entirely upon fate and the absence of inquisitive (and acquisitive) passers-by." *Id.* at 1172-73.

Here, although Davis did not attempt to flee, the core facts are the same. After Officer Cox ordered the driver from the vehicle, Davis made his decision to remove the bag from the vehicle. Why he made that decision and whether he expected to later retrieve the bag are not determinative of the analysis so long as Davis's expectations were objectively unreasonable. Much like the defendant in *Jones*, Davis's ability to recover the bag depended entirely on fate—specifically the possibility that either Officer Cox or Deputy Smith would not observe him retrieving the bag in the event he was freed to leave. In light of the risk Davis faced in placing the bag under the vehicle on the side of a public highway where anyone could pick it up, any expectation of privacy Davis had, by society's standards, was objectively unreasonable.

Therefore, the Court finds that Davis abandoned the bag and waived any Fourth Amendment rights he had in it and its contents. Because the bag was abandoned, Officer Cox and Deputy Smith did nothing unlawful in seizing and searching the bag after it was discovered. *See Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of such abandoned property."); *Hester v. United States*, 265 U.S. 57, 58 (1924); *Flowers*, 912 F.2d at 711 ("The officers also cannot be charged with violating Flowers' Fourth Amendment rights by searching what he led them to believe was an abandoned bag.").

## CONCLUSION

For the foregoing reasons, Davis's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

November 14, 2012
Florence, South Carolina